# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| PAULA FIELDS, | : | Case No. 3:11-cv-156 |
| Plaintiff, | : | District Judge Thomas M. Rose<br>Magistrate Judge Michael J. Newman |
| vs. | : | |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF<br>SOCIAL SECURITY, | :<br><br>: | |
| Defendant. | : | |

### REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; (2) PLAINTIFF'S REQUEST TO REMAND THIS MATTER TO THE COMMISSIONER UNDER THE SIXTH SENTENCE OF 42 U.S.C. § 405(g) BE DENIED; AND (3) THIS CASE BE CLOSED

This is a Social Security disability benefits appeal brought pursuant to 42 U.S.C. § 405(g) and §1383(c). At issue is whether the Administrative Law Judge ("ALJ") erred in finding that Plaintiff Paula Fields ("Plaintiff") was "not disabled" and therefore unentitled to Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff additionally argues that new medical evidence merits a remand to the Commissioner under the Sixth Sentence of 42 U.S.C. § 405(g).

This case is before the Court upon Plaintiff's Statement of Errors (doc. 9), the Commissioner's Memorandum in Opposition (doc. 12), Plaintiff's Reply (doc. 13), and the administrative record.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

# I. BACKGROUND

## A. Procedural History

Plaintiff filed her applications for DIB and SSI on September 19, 2003, asserting that she has been under a "disability" since January 15, 2002. *See* Administrative Transcript ("Tr.") 92-94, 433-34. Plaintiff subsequently amended her alleged disability onset date to June 1, 2003, however. Tr. 55, 453. Plaintiff claims she is disabled due to chronic cluster headaches, cardiac arrhythmia, heart disease, generalized osteoarthritis with degenerative lumbar disc disease of the "L.S. spine," asthma, and lupus inhibitor. Tr. 109.

Following initial administrative denials of her applications, Plaintiff received a hearing before Administrative Law Judge Daniel R. Shell ("ALJ" or "ALJ Shell") on February 28, 2006. Tr. 450-73. On November, 21, 2006, ALJ Shell issued a written decision, concluding that Plaintiff could perform a limited range of light work and was thus "not disabled." Tr. 55-67.

Specifically, the ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant met the disability insured-status requirements of the Act on June 1, 2003, the date the claimant stated she became unable to work, and continues to meet them through March 31, 2008.

2. The claimant has not performed substantial gainful activity since June 1, 2003, the alleged disability onset date.

3. The medical evidence establishes "severe" impairments of degenerative joint disease affecting the knees, degenerative disc disease and history of valvular heart disease but that the claimant does not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1, Subpart P, Regulations No.4.

4. The claimant's allegations of disability are not supported by substantial objective medical evidence or clinical findings and cannot be considered credible when evaluated under the guidelines of 20 CFR 404.1529 and 416.929.

5. The claimant is capable of performing the basic functional requirements of light work, as such work is defined for Social Security purposes, subject to the following additional limitations: she should be permitted to alternate between sitting and standing every 30-45 minutes; she should not be expected to repetitively twist or bend; she should not be required to crawl or climb in the performance of job duties; she should not be expected to perform duties that involve the operation of foot controls.

6. The claimant is unable to perform her past relevant work as a sewing machine operator. That particular job that the claimant did in the relevant past involved the performance of duties and activities that would be precluded by the functional limitations associated with her impairments.

7. The claimant is able to perform her past relevant work as a marker, order clerk, computer operator, data entry operator or routing clerk. Those particular jobs that the claimant did in the relevant past did not involve the performance of any duties or activities that would be precluded by the functional limitations associated with her impairments.

8. The claimant was not "disabled," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 404.1 520(f) and 416.920(f)).

Tr. 66-67.

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. Tr. 40-43; s*ee Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Shortly thereafter, Plaintiff asked the Appeals Council to re-open its denial of review to consider additional evidence, *i.e.,* medical records showing that Plaintiff had undergone left knee replacement surgery in August 2007. *See* tr. 13-39. The Appeals Council denied Plaintiff's request on November 5, 2010.[2] Tr. 11-12. On April 25, 2011, the Appeals Council granted Plaintiff thirty days in which to file a civil action. Tr. 6. Plaintiff timely filed this appeal on May 11, 2011. Doc. 2.

---

[2] The Court reviews the ALJ's decision, not the Appeals Council's denial of review. *See Casey*, 987 F.2d at 1233.

## B. Plaintiff's Vocational Profile and Testimony

At the time of the administrative hearing, Plaintiff was 50 years old and thus considered a person "closely approaching advanced age." *See* 20 C.F.R. §§ 404.1563(d), 416.963. Plaintiff has an Associate's degree in office systems administration with a word processing speciality. Tr. 115, 462. She has past relevant work as a data entry clerk, computer operator and routing clerk, among other positions. Tr. 115, 130, 469.

Plaintiff testified at the administrative hearing that she last worked in data entry in January 2006. Tr. 453-54. She testified that she could no longer work because she had trouble sitting at a desk for a long period of time due to osteoarthritis in her knees. Tr. 462-63. Her knees tend to lock up when she tries to stand up, and she is unable to stand in one spot for sustained periods. Tr. 463. She testified that propping her feet up alleviates her knee pain.[3] Tr. 468.

Plaintiff also testified that she has bilateral hip pain and a small fracture in her lower back. Tr. 463. As a result, it is difficult for her stand on her feet, and although a cane helps her stand, it causes pain in her left arm. Tr. 463-64.

Plaintiff additionally testified that she has debilitating "cluster headaches." Tr. 464. She testified that her headaches come and go. Tr. 468. They may subside for six months to a year, and then return for three weeks to six months. Tr. 469. She recently visited a pain clinic to treat her headaches. Tr. 464-65.

Plaintiff further testified that she suffers from cardiac arrhythmia and heart disease. Tr. 465. She takes beta blockers. Tr. 466.

---

[3] At the time of the hearing, Plaintiff had not had knee surgery. Tr. 463. At that time, her treatment included cortisone shots and patches. Tr. 463, 468. Following the hearing, Plaintiff submitted new medical records to the Appeals Council showing that she had a left knee replacement on August 13, 2007. Tr. 20-21.

Vanessa Harris, a vocational expert ("VE"), also testified at the hearing. Tr. 469-72. The ALJ proposed a series of hypotheticals regarding Plaintiff's RFC to the VE. *See id.* Based on Plaintiff's RFC, age, education, and work experience, the VE testified that Plaintiff could perform her past relevant work as a computer operator, routing clerk, marker, order clerk and data entry clerk. Tr. 470-71. The VE reported that substantial numbers of such jobs exist in the regional economy. Tr. 471-72.

## II.  APPLICABLE LAW

### A.  Substantial Evidence Standard

The Court's inquiry on an appeal such as this is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen* v. *Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. *Id.*

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Thus, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that

error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520. Although a dispositive finding at any step ends the ALJ's review, *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity ("RFC"), can he or she perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and RFC, can he or she perform other work available in the national economy?

20 C.F.R. § 404.1520(a)(4).

## III. ANALYSIS

As a preliminary note, Plaintiff's pertinent medical findings and opinions have been adequately summarized in the parties' briefs, *see* doc. 9 at PageID 57-64; doc. 12 at PageID 81-82, and the Court will not repeat them here.

Plaintiff argues that the ALJ erred in rejecting the disability finding of her treating physician, Dr. D'Allura, and in relying, instead, on the opinion of the state agency reviewers. Doc. 9 at PageID 65-72. For the reasons that follow, the Court finds that the ALJ reasonably decided to not give controlling or deferential weight to Dr. D'Allura's opinion.

### A. Sal D'Allura, D.O.

Sal D'Allura, D.O. was Plaintiff's primary care physician. Dr. D'Allura treated Plaintiff from 1999 through 2005. Tr. 382. He treated her cardiac problems, cluster migraines, and severe degenerative joint disease. Tr. 168-77, 344-52, 394-99.

Plaintiff relies on two disability findings of Dr. D'Allura. *See* doc. 9 at PageID 65-66. In September 2003, Dr. D'Allura opined that Plaintiff was prevented from performing "most jobs" due to the following impairments: chronic cluster headaches; cardiac arrhythmia; vavula heart disease; and generalized osteoarthritis with degenerative disc disease of the LS spine. Tr. 168. He concluded that Plaintiff was therefore "permanently disabled."[4] *Id.*

As support for this first disability opinion, Dr. D'Allura attached six pages of treatment notes (one page for each of six visits). Tr. 172-77. The treatment notes do not provide much detail; they simply list Plaintiff's medical problems, medications, allergies, diagnoses, and briefly state a treatment plan. *See id.* Dr. D'Allura did not provide any records showing the results of clinical tests performed or other objective medical evidence to substantiate his disability finding.

---

[4] The Court notes that this opinion seems contradictory. "Most jobs" suggests that Plaintiff can perform some work and thus implies that she is not permanently disabled under Social Security regulations.

Additionally, in March 2005, Dr. D'Allura completed interrogatories sent by Plaintiff's counsel. Tr. 387-91. He opined that Plaintiff does not have the RFC to perform even sedentary work on a sustained basis. Tr. 391. When asked what medical findings support these work limitations, Dr. D'Allura's response was cursory and non-specific: "chronic medical problems and medical side effects." *See* tr. 388-90. He did not provide any more detail for his disability findings. The record contains only seven additional pages of Dr. D'Allura's treatment notes -- from October 2004 to March 2005 -- to support this disability finding. Tr. 345-51. Like the earlier treatment notes, they simply list Plaintiff's conditions and treatment plan. *See id.*

B.     **The ALJ's Decision Is Supported By Substantial Evidence**

The ALJ set forth the correct standards in evaluating a treating physician's opinion. *See* tr. 60. Applying those standards, the ALJ determined that the disability findings of Dr. D'Allura should not be given controlling or deferential weight. The ALJ's discussed his reasons for reaching that conclusion as follows:

> [Dr. D'Allura's] conclusion [that Plaintiff is rendered disabled] is neither well supported by medically acceptable clinical and laboratory diagnostic techniques nor consistent with other substantial evidence in the case record. The extent of functional limitation described by Dr. D'Allura has no support in objective medical evidence or clinical findings. Furthermore, it is inconsistent with the findings of other examining and evaluating medical sources (Drs. Holbrook and Danopulos).
> 
> The reports of treating physician Dr. Karim indicate that the claimant's cardiac condition remains stable with appropriate treatment. Nothing in the reports of Dr. Karim would support a conclusion that the claimant is rendered disabled from all work activity. Examining physician Dr. Moncrief reported that neurologic examination was normal. No surgical intervention was warranted in the opinion of Dr. Moncrief. Physical therapy had been beneficial in alleviating symptoms associated with musculoskeletal impairment. Treating physician Dr. Martinez reported that the condition of the claimant's knees did not warrant joint replacement surgery.
> 
> Clinical test results did not show evidence of abnormality that would account for the degree of functional limitation described by Dr. D'Allura. The only plausible explanation for the rather pessimistic assessment of the claimant's functional

> capabilities provided by Dr. D'Allura is that such an assessment was based on uncritical acceptance of the claimant's subjective complaints and allegations. For Social Security purposes, an impairment must be established by medical evidence consisting of signs, symptoms and laboratory findings not only by a claimant's statement of symptoms. The degree of limitation described by Dr. D'Allura is not substantiated by the weight of the evidence and cannot be considered credible. The claimant may have some functional limitations associated with musculoskeletal impairment, but the weight of the evidence of record does not establish that such impairment would render the claimant disabled from all work activity.

Tr. 60-61 (footnotes omitted).

The Court finds that the ALJ's decision – to not give controlling or deferential weight to Dr. D'Allura's disability finding – is supported by substantial evidence. Although, as a general matter, an adequately supported treating source opinion is entitled to great weight, *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009), a treating source's broad, conclusory formulations regarding the ultimate issue of disability are not determinative of the question of whether an individual is under a disability. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). "'[I]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent [with the] other substantial evidence in the case record.'" *Blakely*, 581 F.3d at 406 (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996)). "If the ALJ does not accord controlling weight to a treating source, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Id.*

The Court finds that ALJ Shell gave good reasons -- which find support in the record -- for rejecting Dr. D'Allura's disability findings. Dr. D'Allura failed to describe how clinical findings

9

or objective medical evidence demonstrate that Plaintiff is disabled. Rather, he merely stated "chronic medical problems and medical side effects" make Plaintiff unable to perform basic work-related functions. *See* tr. 388-90.

Moreover, Dr. D'Allura's opinions are inconsistent with other medical opinions in the record. None of the medical specialists to whom Plaintiff was referred by Dr. D'Allura indicated that Plaintiff was disabled. Dr. Karim, who treated Plaintiff's heart condition, informed Dr. D'Allura that Plaintiff was stable. Tr. 337, 339. In addition, Dr. Moncrief conducted a neurological examination of Plaintiff, and reported to Dr. D'Allura that the results were normal. Tr. 371-72.

Further, the opinions of the State agency doctors are inconsistent with Dr. D'Allura's opinions. In February 2004, Dr. Danopulos examined Plaintiff, reviewed her medical history, ordered X-rays of her spine, and conducted various tests on her motor skills and range of motion. Tr. 320-30. While he found "[h]er ability to do any work-related activities like standing, walking, lifting, and carrying are restricted from her early lumbar spine arthritis and left knee moderate arthritis," he did not find her disabled. *See* tr. 324. Further, Dr. Holbrook reviewed Dr. Danopulos's findings, and opined that Plaintiff had the capacity to perform a reduced range of light work. *See* tr. 332-36.

In sum, the Court finds Plaintiff's assignment of error is unpersuasive. The ALJ provided good reasons, supported by substantial evidence in the record, to not give controlling or deferential weight to Dr. D'Allura's opinions. Accordingly, the ALJ acted within the "zone of choice" and should therefore be affirmed. *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001).

## C. A Remand for Consideration of Additional Evidence is Unwarranted

Finally, the Court will address Plaintiff's request that, if the ALJ's decision is not reversed, the case be remanded to the Commissioner for consideration of additional evidence, *i.e.,* records of Plaintiff's subsequent left knee replacement. Doc. 9 at PageID 71; tr. 13-39. Under the Sixth Sentence of 42 U.S.C. § 405(g), the Court may remand a case to the Commissioner for further consideration "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 484 (6th Cir. 2006).

Evidence is "material" if there is "a reasonable probability that the Commissioner would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (citation omitted). Further, evidence of a subsequent deterioration or change in the plaintiff's condition after the administrative hearing is deemed immaterial. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992); *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711-12 (6th Cir. 1988).

Here, Plaintiff's subsequent left knee replacement surgery in August 2007 is not material to her condition from her June 1, 2003 alleged onset date to the February 28, 2006 administrative hearing date. *Cf. Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 653-54 (6th Cir. 2009) (finding that new evidence of surgeries is not "material"); *Staples v. Comm'r of Soc. Sec.*, 159 F. App'x 670, 672 (6th Cir. 2005) (same). This evidence only shows that Plaintiff's left knee deteriorated during the eighteen months following the hearing, which is immaterial to the ALJ's non-disability finding. *Wyatt*, 974 F.2d at 685. If Plaintiff believes that, since the ALJ's decision, her left knee has deteriorated so as to render her disabled, the appropriate remedy is to initiate a new claim for benefits. *See Sizemore*, 865 F.2d at 712. Accordingly, a remand to the Commissioner to

consider this additional evidence would be inappropriate, and Plaintiff's request for a Sentence Six remand should be denied.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The ALJ's non-disability finding be found supported by substantial evidence, and **AFFIRMED**;

2. Plaintiff's request to remand this matter to the Commissioner under the Sixth Sentence of 42 U.S.C. § 405(g) be **DENIED**; and

3. This case be **CLOSED**.


July 13, 2012 **s/Michael J. Newman**
United States Magistrate Judge

**<u>NOTICE REGARDING OBJECTIONS</u>**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).